UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREW S. BULLARD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:21-CV-1427-ACL |
| | ) |
| TERI VANDERGRIFF, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Andrew S. Bullard for a writ of habeas corpus under 28 U.S.C. § 2254. This matter is fully briefed and ripe for disposition.

### I.     Procedural History

Bullard is currently incarcerated at Farmington Correctional Center in Farmington, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis County, Missouri. (Doc. 9-1 at 76-78.)

On March 3, 2017, a jury found Bullard guilty of first-degree child molestation. *Id.* at 68. The court sentenced Bullard to ten years' imprisonment. *Id.* at 76-78.

On direct appeal of his conviction, Bullard raised the following claims: (1) the trial court erred in allowing testimony that the victim's father saw photographs on Bullard's phone; (2) the trial court erred in excluding evidence of the victim's father's reputation for violence; and (3) the trial court erred in overruling defense counsel's objection during the prosecutor's closing argument. (Doc. 9-7 at 12-14.) On August 14, 2018, the Missouri Court of Appeals affirmed Bullard's conviction. (Doc. 9-9.)

In his post-conviction relief motion, Bullard raised the following ineffective assistance of trial counsel claims: (1) trial counsel failed to object or request a mistrial when the court failed to

1

read MAI-CR4th Jury Instructions 400.04, 400.06, and 402.01 until the conclusion of the evidence; and (2) trial counsel failed to object or request a mistrial when the prosecutor argued that Bullard's attempt to contact an attorney demonstrated consciousness of guilt.  (Doc. 9-10 at 47-49.)  The motion court denied the motion and Bullard's request for an evidentiary hearing. *Id.* at 45-51.

In his appeal from the denial of post-conviction relief, Bullard argued that trial counsel was ineffective for failing to object or seek a mistrial where the trial court failed to read MAI-CR4th Jury Instruction 402.01 until the conclusion of the evidence.  *Id.* at 16.  He also argued that trial counsel was ineffective for failing to object or seek a mistrial when the prosecutor adduced evidence that Bullard had searched for an attorney and argued that search constituted proof of consciousness of guilt.  *Id.* at 18.  On July 6, 2021, the Missouri Court of Appeals affirmed the decision of the motion court.  (Doc. 9-13.)

Bullard filed the instant Petition on November 15, 2021, in which he raises four grounds for relief.  (Doc. 1.)  Bullard first argues that the trial court erred in admitting hearsay evidence. *Id.* at 4.  He next argues that trial counsel was ineffective in failing to object when the court did not read MAI-CR4th Jury Instructions 400.04, 400.06, and 402.01 until the conclusion of the evidence.  *Id.* at 6.  Bullard also contends that trial counsel was ineffective in failing to object when the State argued that Bullard's internet search for an attorney was evidence of consciousness of guilt.  *Id.* at 7.  Finally, Bullard argues that the trial court erred in allowing the video of the victim's interview.  *Id.* at 9.

Respondent argues that some of Bullard's claims are procedurally defaulted, and all of his claims fail on their merits.

2

## II. Facts[1]

Bullard and the victim's father ("Father") were friends since high school, and Bullard introduced Father to his wife ("Mother"). After graduating high school in 1998, Bullard moved away from the St. Louis area, serving in the Marine Crops from 1998 to 2002. Bullard returned to the St. Louis area in 2009, moving in with Father's family for six months. At that time, Father and Mother had two children together: Victim, born in September 2007; and a son ("Son") about six years older than Victim. After moving out, Bullard would still frequently stay the night at Father's house, especially on weekends after drinking. Bullard would often sleep on a pullout couch, and Victim would sometimes sleep next to him.

In October 2012, Bullard, Father, and Son went on a dirt bike riding trip. While Bullard and Son were out riding, Father became bored and looked through Bullard's phone because Father's phone did not have service. Father found photographs on Bullard's phone that led him to no longer allow his children to be around Bullard unattended.

In November 2012, while sitting around a bonfire at a friend's house, a comment was made about someone being "a little weird." In response, Victim said she knew someone weirder than that. Father asked her who, and Victim whispered to Father, "Bullard." Father took Victim aside and asked her what she meant. Victim told Father that one night when she slept on the pullout couch next to Bullard, Bullard pulled own her underwear and tried to put his penis into her vagina. Father told Victim to go tell Mother what she told him. Father got in his car and drove towards Bullard's home.

On his way, Father called Bullard and asked him where he was. Bullard told Father he was at home and Father told him to stay there. Father then said, "explain to me why my

---

[1]The Court's summary of the facts is taken directly from the decision of the Missouri Court of Appeals on direct appeal. (Doc. 9-9 at 2-4.)

3

daughter would tell me that a man that she's looked at like a second father, she loves, would tell me that she was sexually assaulted by you." Father testified that Bullard said he did not know what Father was talking about. Father told Bullard that after finding the photos and hearing what his daughter said, he did not believe Bullard and wanted to be told the truth. Father testified Bullard then said he was sorry and, after being asked if he was admitting guilt, apologized again. Bullard denied apologizing on the phone. Father told Bullard to turn himself in the next day. Before arriving at Bullard's home, Father stopped to talk to Mother on the phone and Mother convinced him not to take matters into his own hands. Father turned around and returned to the friend's house. Father and Mother then called the police. Bullard sent Father the following text message the next day: "okay, I'm going in…I know you're still mad at me. I just hope you can find it in your heart to forgive me some day." Bullard, however, did not turn himself in.

Mother took Victim to the hospital the next day. Victim told a social worker Bullard touched her "potty" with his "potty" more than once before she told him to stop. Victim said Bullard stopped touching her when she told him to stop. Victim pointed to the vaginal area on the diagram before her and said Bullard touched her there. Victim told the social worker it felt weird because, "his potty was inside my potty." Victim said that Bullard did this during a night when they were both sleeping on the pullout couch.

A forensic interviewer also interviewed Victim. Victim told the forensic interviewer Bullard put his "wiener" into her "potty." Victim identified body parts not to be touched and said Bullard touched her vagina. Victim again said this event happened on the pullout couch. Victim told the forensic interviewer she turned over and he stopped.

Bullard was arrested on December 10, 2012, and the State charged him with first-degree child molestation. Before trial, Bullard moved to suppress all testimony about the photographs

4

Father saw on Bullard's phone in October 2012 and Bullard's text message to Father sent on December 1, 2012. Bullard also attempted to suppress evidence that a forensic examination of his cellular phone showed that he had searched for an attorney after being confronted by Father. Bullard's motion to suppress was overruled, but the court ordered the contents of the photographs not be discussed.

### III.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions

5

but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

### IV. Procedural Default

Respondent argues that most of Bullard's claims are procedurally defaulted because he did not properly present them to the state courts.

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in state court in accordance with state procedural rules. *Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam); *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted). A claim must be presented at each step of the judicial process in State court in order to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). It is "the settled law of this Circuit that a habeas petitioner must have raised both the factual and legal bases for each claim in the state courts in order to preserve the claim for federal review." *King v. Kemna,* 266 F.3d 816, 821 (8th Cir. 2001) (cleaned up). If the petitioner failed to properly present the claim in state court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In Ground 1, Bullard argues that the trial court erred in admitting hearsay evidence. He admits that he did not raise this claim at any point in the state court proceedings. As such, Ground 1 is procedurally defaulted.

Ground 2 alleges an ineffective assistance of counsel claim based on trial counsel's failure to ask the court to read jury instructions 400.04, 400.06, and 402.01 prior to the closing of the evidence. Bullard raised this claim in his post-conviction relief motion. (Doc. 9-10 at 47-49.) In his appeal from the denial of post-conviction relief, he argued that trial counsel was ineffective for failing to object when the trial court failed to read *jury instruction 402.01* prior to the closing of the evidence ("Ground 2(a)). *Id.* at 16. He did not raise the claim with regard to instructions 400.04 or 400.06 ("Ground 2(b)"). Thus, Bullard properly presented Ground 2(a) to the state courts, but procedurally defaulted Ground 2(b) by failing to present this claim in his appeal from the denial of post-conviction relief.

Ground 3 alleges that trial counsel was ineffective for failing to object when the State argued that Bullard's internet search for an attorney was evidence of consciousness of guilt. Bullard presented this claim to the state courts by raising it in his post-conviction relief motion and on appeal from the denial of post-conviction relief. Respondent contends that the Court should deny this claim as procedurally defaulted, because the Missouri Court of Appeals noted deficiencies in his appellate brief. Respondent, relying upon *Clark v. Bertsch*, 780 F.3d 873, 877 (8th Cir. 2015), argues that the fact that the Missouri Court of Appeals chose to exercise its discretion and review the claim anyway does not cure Bullard's default. In *Clark*, the Eighth Circuit held that the state court's "discretionary *plain-error review* of Clark's unpreserved claims cannot excuse his procedural default." *Id.* (emphasis added). Here, the Missouri Court of Appeals did not review for plain error only; rather, the Court reviewed Bullard's claim on its

merits. (Doc. 9-13 at 17-18) ("Because Movant's point provides sufficient notice to the parties and this Court as to the issue presented on appeal, we will review the merits.") Thus, the undersigned will review Ground 3 on its merits.

In Ground 4, Bullard argues that the trial court erred in allowing the video of Victim's interview to be played for the jury. Bullard has defaulted this claim by not raising it in his direct appeal.

To establish legally sufficient cause for the procedural default of Grounds 1, 2(b), and 4, Bullard must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 750–52. To establish actual prejudice, a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted).

Bullard does not attempt to demonstrate cause for his default. Thus, Grounds 1, 2(b), and 4 are procedurally defaulted.

## VI.   Petitioner's Claims

The Court has already found that Grounds 1, 2(b), and 4 are procedurally defaulted. As will be discussed below, all of Bullard's claims are also meritless.

### 1. Ground 1

In his first ground for relief, Bullard argues that the trial court erred in admitting hearsay evidence. As supporting facts for this claim, Bullard states as follows: "Allowing hearsay to be evidence does not allow for a fair trial. There is no way to effectively defend against a statement that the court says is fact and this is done with the court only hearing it, not

8

researching." (Doc. 1 at 4.)  Because Bullard only makes this general statement and does not identify the testimony at issue, the Court cannot analyze the merits of this claim.

Accordingly, Ground 1 is denied.

**2. Ground 2**

Ground 2 sets forth an ineffective assistance of counsel claim based on trial counsel's failure to ask the trial court to read jury instructions 400.04, 400.06, and 402.01[2] earlier in the trial.  Noting that the trial court elected to use the identical 3rd edition instructions, the Missouri Court of Appeals referred to the 3rd edition instructions in its opinion.  *Id.  For ease, this Court will refer to the MAI-CR3rd instructions from here forward.*  As previously discussed, only Bullard's claim with regard to instruction 302.01 was properly raised in the state court proceedings.

MAI–CR3d 302.01 delineates the duties of judge and jury and provides as follows:

Those who participate in a jury trial must do so in accordance with established rules. This is true of the parties, the witnesses, the lawyers, and the judge. It is equally true of jurors. It is the court's duty to enforce these rules and to instruct you upon the law applicable to the case. It is your duty to follow the law as the court gives it to you.

However, no statement, ruling, or remark that I may make during the trial is intended to indicate my opinion of what the facts are. It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all the evidence in the

---

[2] Although Bullard argues that the trial court should have read instructions from MAI-CR4th the Missouri Court of Appeals found that the trial court was free to choose between MAI-CR3rd and MAI-CR4th due to the timing of Bullard's trial.  (Doc. 9-13 at 9.)

9

case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

It is important for you to understand that this case must be decided only by the evidence presented in the proceedings in this courtroom and the instructions I give you. The reason for this is that the evidence presented in court is reviewed by the lawyers and the court, and the lawyers have the opportunity to comment on, or dispute, evidence presented in court. If you obtain information from other places, the lawyers do not have the opportunity to comment on or dispute it. Fairness and our system of justice require giving both sides the opportunity to view and comment on all evidence in the case. It is unfair to the parties if you obtain information about the case outside this courtroom.

Therefore, you should not visit the scene of any of the incidents described in this case, nor should you conduct your own research or investigation. For example, you should not conduct any independent research of any type by reference to textbooks, dictionaries, magazines, the Internet, a person you consider to be knowledgeable or any other means about any issue in this case, or any witnesses, parties, lawyers, medical or scientific terminology, or evidence that is any way involved in this trial.

You should not communicate, use a cell phone, record, photograph, video, e-mail, blog, tweet, text or post anything about this trial or your thoughts or opinions about any issue in this case to any person. This prohibition on communication about this trial includes use of the Internet, [*List popular websites such as "Facebook," "MySpace," "Twitter."*], or any other personal or public website.

Faithful performance by you of your duties as jurors is vital to the administration of justice. You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until you have heard all the evidence and the case is given to you to decide.

On the fourth day of trial, after the close of all evidence and before closing arguments,

the court made the following record:

> The Court:   So we are back on the record outside the presence of the jury with regard to *State of Missouri v. Andrew Bullard*.
>
> At the end of the day yesterday the Court had a realization that it had failed to read certain instructions to the jury after the jury was sworn, specifically, 302.01 and 302.02.

> The Court discussed this with counsel for both sides.   Both sides were given an opportunity to do research to determine what, if any, potential remedies the Court was in a position to do with regards to its failure to read these instructions.
>
> After discussions and researching with regards, specifically with regards to *State of Missouri v. Robinson* in which the case was reversed for failing to read such instructions as well as *Smithville v. Summers* and *State of Missouri v. Cedric Rice* with regards to potential concerns over whether or not the Court would be in a position to grant a mistrial causing the State to have an inability to prosecute going forward with regards to double jeopardy, the parties have agreed at this time to allow the Court an opportunity to read the specific instructions to the individual jurors outside the presence of the other jurors to inquire of those jurors with regards to whether or not they were able to follow those specific instructions through the course of the trial despite not having had them read to them through the course of the trial to try to determine whether or not there is any prejudice or inability on their part to have properly processed the information since the Court did not instruct them prior to the situation.
>
> Is that correct?
>
> [Defense counsel]:    That is correct.
>
> [Prosecutor]:          That is correct.
>
> The Court:           And it is also something that counsel for the defendant has discussed with the defendant, is that correct?
>
> [Defense counsel]:    That is correct.
>
> The Court:           And this was done with the full knowledge of *State v. Robinson* in which the case was reversed.   Is that correct?
>
> [Defense counsel]:    That is correct.
>
> The Court:           And despite the fact that he might very well have a reversal based upon that, he is wishing for the Court to go forward and, in fact, he is waiving any rights or objections with regards to the Court reading these instructions to them at this time.
>
> [Defense counsel]:    We have no objection to the procedure that the Court has outlined for trying to assess and determine whether or not the jurors can follow the instructions.

(Doc. 9-11 at 1097-99.)

The Court then brought in each juror individually, read them approved instructions 302.01 and 302.02, and inquired as to whether they had been able to follow these instructions for the duration of the trial. *Id.* at 1100-1186. All of the jurors affirmed that they could follow the instructions and had been following them for the duration of the trial. *Id.*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

    **i.**    **Ground 2(a)**

Bullard raised his claim related to instruction 302.01 (Ground 2(a)), in his post-conviction relief motion and in his appeal from the denial of post-conviction relief. The Missouri Court of Appeals denied Bullard's claim. In doing so, the Court distinguished the instant case from *State v. Robinson*, 484 S.W.3d 862, 867 (Mo. Ct. App. 2016), in which the Missouri Court of Appeals found plain error when the trial court failed to read preliminary instructions MAI-CR3d 300.06, 302.01, and 302.02. The Missouri Court of Appeals held as follows, in relevant part:

> Mindful of the lesson to be learned from the plain error in *Robinson*, the trial court allowed the parties to research the issue overnight. Both parties specifically agreed to the court reading the instructions to the jury at the close of the evidence when both parties rested their cases and then to individually voir dire each juror. Trial Counsel agreed to this procedure. Moreover, the record refutes Movant's post-conviction claim as the trial court noted that Movant waived any rights or objections with regard to the court reading these instructions to the jurors at the time. Additionally, the record refutes Movant's claim that this prejudiced

> him in that the individual jurors responded under oath that they had followed the instructions, MAI-CR3d 302.01 and 302.02, throughout the course of the trial.
>     Like in *Barton*, the instructions here were read to the jury before closing arguments and were available to the defense to argue and use during closing arguments. Movant cannot establish prejudice simply by arguing a presumption that he was prejudiced by Trial Counsel's agreement to the trial court reading the omitted instructions and voir diring the jurors individually about it or failure to request a mistrial. Moreover, Movant's claim is refuted by each juror's response during the court's questioning that they had been able to follow the instructions throughout the course of the trial. Movant has failed to demonstrate a reasonable probability that a request for a mistrial would have been granted or that the result of trial would have been different had the instructions been timely read.
>     Furthermore, Movant cannot meet the performance prong of the *Strickland* test demonstrating that counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation. Cognizant of the plain error meriting reversal in *Robinson*, the parties researched and agreed upon their method of rectifying the omission of a jury instruction. Movant has not demonstrated Trial Counsel's decision was incompetent or unreasonable, or that it was anything but reasonable trial strategy for Trial Counsel to work with the trial court and the State to ensure the jurors understood their roles and followed the instructions provided without wasting judicial resources by requiring Movant to start over with a new trial.

(Doc. 9-13 at 15-16.)

The Missouri Court of Appeals properly applied *Strickland* in finding trial counsel's performance was not deficient. Further, Bullard is unable to demonstrate prejudice, as each juror individually responded that they had been able to follow the instructions throughout the course of trial. Thus, the decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of clearly established federal law.

    **ii.    Ground 2(b)**

Bullard argues that trial counsel was ineffective for failing to object or request a mistrial when the trial court failed to issue instructions 300.04 and 300.06 (the equivalent of instructions 400.04 and 400.06 contained in MAI-CR4th). As previously discussed, Bullard procedurally defaulted this claim by failing to raise it in his appeal from the denial of post-conviction relief. The claim fails on its merits as well.

13

Instruction 300.04 is required to be given at the first recess or adjournment, including if that recess or adjournment takes place during voir dire.  (Doc. 9-15 at 1-2.)  It is also required to be given at all subsequent recess or adjournments and at recess after the first stage of a bifurcated trial.  *Id.*  The instruction was issued to the jury by the trial court in this case at the first recess.  (Doc. 9-11 at 266.)  It was also given at each subsequent recess.  *Id.* at 365, 403, 413, 576, 657, 702-03, 8005, 837, 882, 945, 958, 1015, 1095.  Thus, there was no reasonable basis for trial counsel to object, and Bullard cannot show that counsel's performance was deficient.

Instruction 300.06 is required to be read after the jury has been sworn.  (Doc. 9-15 at 3.) Instruction 300.06 was issued to the jury in this case.  (Doc. 9-11 at 1196.)  Consequently, Bullard is unable to demonstrate his counsel was constitutionally ineffective for making a meritless objection.

Accordingly, Ground 2 is denied.

### 3. Ground 3

In Ground 3, Bullard argues that trial counsel was ineffective for failing to object when the prosecutor argued Bullard's internet search for an attorney suggested consciousness of guilt.

Bullard raised this claim in his post-conviction relief motion and in his appeal from the denial of post-conviction relief.  The Missouri Court of Appeals rejected Bullard's claim, holding as follows, in relevant part:

> Trial Counsel attempted to suppress the evidence from Movant's cell phone, including his search for an attorney, but the trial court permitted the evidence because it was relevant and admissible information after the State argued it showed a consciousness of guilt. [citation omitted].  Trial Counsel renewed the motion to suppress later during Karase's testimony about conducting the forensic examination of the phone, and thus, cannot be ineffective for failing to object to the evidence that a forensic examination of Movant's cell phone showed that he had searched for an attorney. Moreover, post-conviction relief is

14

> not the proper avenue for a related argument that the trial court erred in denying his motion to suppress the evidence.
>
> Furthermore, Movant's claim fails because upon consideration of the record as a whole, as set forth in the "Background" section herein, Trial Counsel employed a reasonable trial strategy to show the forensic cell phone evidence in a light favorable to Movant. [citation omitted]. After the trial court admitted the cell phone evidence, Trial Counsel attempted to make the best of the situation. Trial Counsel presented testimony and argument that Movant's search for an attorney was motivated by Father's threats and Movant's reason to fear that Father would act on those threats and kill him. Trial Counsel attempted to demonstrate the purpose of the Google search was to determine what Movant would do to protect himself from Father, including possibly obtaining a restraining order. Movant cannot show that his Trial Counsel's attempt to turn this cell phone evidence into favorable evidence was anything but reasonable trial strategy.

(Doc. 9-13 at 18-19.)

The Missouri Court of Appeals reasonably applied *Strickland* in denying Bullard's claim. As the Court noted, defense counsel attempted to suppress the evidence of Bullard's search for an attorney. When his motion was unsuccessful, he used the evidence to Bullard's advantage and argued that Bullard sought legal advice to protect himself from Father. The decision of the Missouri Court of Appeals is not contrary to or an unreasonable application of clearly established federal law.

Thus, Ground 3 is denied.

4. **Ground 4**

In his final ground for relief, Bullard argues that the trial court erred in allowing the video of Victim's forensic interview to be played for the jury. He claims that defense counsel showed that the interview was "coached" and "unreliable." (Doc. 1 at 9.) The Court has found that Bullard has defaulted this claim by not raising it in his direct appeal.

The record reveals that the State filed a notice of its intention to use Victim's statements made during the forensic interview pursuant to Mo. Rev. Stat. § 491.075. (Doc. 9-1 at 35.)

15

The trial court found that Victim's statements provided sufficient indicia of reliability such that they were admissible as substantive evidence to prove the truth of the matter asserted. *Id.* at 37.

Bullard's claim that the trial court erred in admitting Victim's statements is not cognizable in a federal habeas action. With limited exceptions, "admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief[.]" *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994). "Thus, on habeas review of a state conviction, a federal court does not examine whether evidence was properly admitted under state law." *Tokar v. Bowersox*, 1 F. Supp. 2d 986, 1004 (E.D. Mo. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)). Rather, review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* A federal court will reverse a state court evidentiary ruling "only if it 'infringes upon a specific constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process.'" *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir. 1992) (quoting *Berrisford v. Wood*, 826 F.2d 747, 749 (8th Cir. 1987)).

Bullard has not shown that the admission of Victim's statements as shown on the video violated his constitutional rights, nor does the record show his rights were violated by the admission of this evidence. Thus, the Court will deny this claim.

## VIII.  Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Bullard

has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

**IT IS FURTHER ORDERED** that petitioner's pending motions are **denied**.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2025.